DENNIS, Justice.
This case involves a suit for damages arising from the breach of an alleged oral contract by a bank to refrain from the enforcement of a debt secured by a mortgage on an immovable. After a judge trial, the district court awarded damages to plaintiffs, finding that the creditor bank had wrongfully foreclosed on the mortgage despite its oral promise to plaintiffs, for valid consideration, to forbear for three years, and awarded damages. The court of appeal, 425 So.2d 853, reversed holding that “[jjust as the promise to pay the debt of a third party is required to be in writing [by C.C. art. 2278(3)], so is a contract to forbear, relative thereto, required to be in writing.”
We granted writs because the court of appeal’s decision appears to have been based on a misinterpretation of the code. Article 2278(3) provides that “[pjarol evidence shall not be received .. . [t]o prove any promise to pay the debt of a third person.” It does not prohibit the introduction of parol evidence to prove a creditor’s promise to refrain from the enforcement of an obligation.
However, upon reviewing the entire record, including both documentary and pa-rol evidence, we conclude that the evidence does not justify a finding that the creditor bank promised to refrain from enforcing the obligation for three years as contended by the plaintiffs. Accordingly, we will affirm the judgment of the court of appeal, but only because the result it reaches is correct.
During 1978 and 1979, the defendant, Peoples Bank and Trust Company, loaned Harold L. McCain, Jr. and Frank A. Wink-ler sums totaling approximately $400,000 to *1115 build a restaurant on Sibley Lake in Natchi-toches. The loans were secured by a mortgage on the property. After the restaurant opened, McCain bought out Winkler and became sole owner of the business. By October 1980, McCain’s business was faltering and he was seriously delinquent in his obligations to the bank.
One of the plaintiffs, Celles Enterprises, Inc., — 1980, a limited partnership, leased the restaurant from McCain in November, 1980. The other plaintiffs herein are members of the limited partnership. Celles Enterprises operated the restaurant and paid ten percent of its sales to the bank in November and December as required by the terms of the lease. These payments were insufficient, however, to make the payments required by McCain’s obligation. When it became known that the bank intended to foreclose, a representative of Celles Enterprises met with two bank officers on February 11,1981. After this meeting, Celles Enterprises paid approximately $17,000, which was applied to McCain’s indebtedness, and the bank did not commence its contemplated foreclosure proceedings.
After making a $8920.53 payment on McCain’s debt in March, 1981, Celles Enterprises contracted for extensive renovations to the restaurant. In April, Celles Enterprises tendered another payment, but it was returned by the bank. The bank invited Celles Enterprises’ representatives to a meeting and informed them that it had learned McCain was insolvent and planned to take bankruptcy. The bank offered to let Celles Enterprises assume McCain’s indebtedness, but at a higher interest rate, and offered to loan the partnership the necessary capital if its partners personally signed the note and solidarity obligated themselves. Celles Enterprises and its partners declined the offer and the bank foreclosed.
After an unsuccessful attempt to enjoin the bank’s executory proceedings, Celles Enterprises and its partners brought this action for damages alleging that the bank breached its agreement with Celles to forbear for three years so long as the partnership made timely scheduled payments on McCain’s notes. Following a judge trial, the district court awarded damages and attorney’s fees to Celles Enterprises and its individual partners in the total amount of $181,844.69. On appeal, the court of appeal reversed.
The court of appeal’s judgment was correct in result because the trial court fell into manifest error when it found that the bank agreed or promised to refrain from the enforcement of its rights against McCain for a fixed period if Celles made certain interim payments. The record reflects that no one testified that the bank officials ever orally expressed such a commitment and there is no written evidence containing such a promise.
The bank officers consistently denied having made any such agreement. George Celles, III, the only partner who discussed the matter with them, did not testify that the officers made such a commitment in their conversations. Instead, Celles said that, in reply to his request for a statement of the partnership’s position in the event it continued to make payments on the McCain notes, he received a letter in reply from the bank which stated:
Dear George:
Bea had requested an amortization schedule for the notes of McCain-Winkler on Captain’s Galley. I am unable to give you this information because they are not on a fixed interest rate. We approved this loan as a ‘Renegotiated Mortgage’ with the rate to be set every five years. However, I am able to give you the following information concerning these notes:
Note No. BR #27795 Balance $27,332.48 Rate: 14% Due 3-15-81 Pmt. $434.76
Note No. BR #26184 Balance $29,780.03 Rate: 12% Due 3-15-81 Pmt. $485.77
Note No. BR #27794 Balance $338,020.87 Rate: 9.5% Due 3-15-81 Pmt. $3,000.00
George, these monthly payments include interest. The rate will be reviewed in January, 1984. Until that date the rate is fixed as shown above.
*1116 If you have any questions concerning this matter, or if I can be of further assistance to you, please do not hesitate to let me know.
With kindest personal regards, I remain
Sincerely,
s/ Gary S. DeBlieux
Celles testified that he interpreted this letter, which was introduced into evidence, to state that the bank would not foreclose on the McCain loan if Cedes Enterprises made payments satisfactorily until January of 1984. Aside from this letter, which cannot be reasonably so construed, Cedes did not testify to any specific communication from the bank by which it committed itself to a prolonged forbearance. Additionally, Cedes’ testimony that the letter was sent in response to his request for a statement of the partnership’s position was inconsistent with the testimony of the other witnesses. One of the bank officers recalled that Cedes asked only for á letter stating that his guaranty of a partnership loan in connection with the McCain matter would not jeopardize his credit with the bank in relation to his other businesses. Cedes’ office manager and comptroller, Bea Monk, testified that she reminded a bank officer to send an unspecified letter earlier requested by Cedes, and that she also requested an amortization schedule of the McCain loan. The substance of the letter introduced into evidence indicates that it does nothing more than comply with Bea Monk’s own request for loan information by detailing the payment schedule on McCain’s notes through January, 1984. Consequently, the substance of the letter introduced, and the absence of any other letter between these parties in the record tends to contradict both Cedes’ interpretation of the letter and his version of the events preceding his receipt of it.
Although the record indicates that the bank in fact refrained from the enforcement of McCain’s obligation because of Cedes Enterprises’ payments from February 11, 1981 until the bank learned of McCain’s impending bankruptcy, the evidence in this case does not provide a reasonable basis for finding that the bank promised or led Cedes to believe that it would forbear until January 1984, or for an extended period, conditioned exclusively on Cedes Enterprises’ continued payments.
For the reasons assigned, the judgment of the court of appeal is affirmed.
AFFIRMED.
WATSON, J., concurs.